NEAL H. KONAMI (STATE BAR #111730)
Attorney at Law
255 California Street, Suite 600
San Francisco, CA 94111-4912
(415) 274-0956

Attorney for Debtor/Appellant
MARIA O. SEGOVIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) **Case No. 3:08-cv-3075** |
| | ) |
| MARIA O. SEGOVIA, | ) **OPENING BRIEF OF APPELLANT** |
| | ) |
| Debtor & Appellant. | ) On appeal from the United |
| | ) States Bankruptcy Court for |
| | ) the Northern District of |
| | ) California (Hon. Carlson) |
| | ) |

**MARIA O. SEGOVIA:** DEBTOR & APPELLANT

**E. LYNN SCHOENMANN:** CHAPTER 7 TRUSTEE & APPELLEE

OPENING BRIEF OF APPELLANT, MARIA O. SEGOVIA

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................... iii

STATUTES AND REGULATIONS ................................. v

TREATISES ................................................. vi

Miscellaneous ............................................. vii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ........ 1

THE APPLICABLE STANDARD OF APPELLATE REVIEW ............. 1

STATEMENT OF THE ISSUES PRESENTED ...................... 1

STATEMENT OF THE CASE .................................. 2

ARGUMENTS ............................................... 5

    I.  The LTICP's non-qualified stock options are exempt as private retirement plan benefits under California Code of Civil procedure § 704.115 because they evidence the intent of Wells Fargo to design a retirement plan to the extent it specifically defines "retirement," and how an employee's non-qualified stock options will vest as retirement benefits ............................ 5

    II. The LTICP's non-qualified stock options by definition provide retirement income to retired Wells Fargo employees thereby fulfilling ERISA's definition of a covered or subject "pension plan." ............................................ 9

    III. Once the LTICP is determined to be subject to ERISA, the stock options are "excluded" from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), and the Debtor is entitled to all forms of equitable relief under ERISA 502(a)(3)...... 22

CONCLUSION & DEBTOR'S PRAYER FOR EQUITABLE RELIEF ....... 24

ii

**TABLE OF AUTHORITIES**

**CASES**

*Ambris v. Bank of N.Y.*, 1997 U.S. Dist. LEXIS 2575
(S.D.N.Y. Mar. 10, 1997; DOL Adv. Op. 97-10A) ...............19

*Aramony v. United Way of Am.*, 254 F.3d 403
(2d Cir. 2001) .........................................12

*Boone v. United States*, 944 F.2d 1489,
1492 (9th Cir. 1991) ..................................1

*Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546,
550 (6th Cir. 1989) ..................................10

*Brown v. Blue Cross & Blue Shield of Ala.*,
898 F.2d 1556, 1559 (11th Cir. 1990),
*cert. denied*, 498 U.S. 1040 (1991) ................11,12

*Canada Life Assurance Co. v. Estate of Lebowitz*,
185 F.3d 231, 235 (4th Cir. 1999) ....................13

*Cinelli v. Security Pacific Pac. Corp.*,
61 F.3d 1437, 1441 (9th Cir. 1995) ...................14

*Connolly v. PBGC*, 475 U.S. 211 (1986) .................11

*Diebler v. United Food & Commercial Workers
Local Union 23*, 973 F.2d 206 (3d Cir. 1992) ...........15

*Donovan v. Dillingham*, 688 F.2d 1367,
1373 (11th Cir. 1982)(*en banc*) .....................14

*Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir. 1983),
*cert. denied,* 464 U.S. 1040 (1984) ...................23

*Ed Miniat, Inc. v. Globe Life Ins. Co.*,
805 F.2d 732 (7th Cir. 1986) .........................13

*Even v. Penn,* 587 F.2d 453 (10th Cir. 1978) .........23

*Feder v. Paul Revere Life Ins. Co.*,
228 F.3d 518 (4th Cir. 2000) .........................12

*Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1, 7 n.5 (1987) ............................14,15

iii

*Great-West Life & Annuity Inc. Co. v. Knudson*,
534 U.S. 204 (2002) ........................................23

*Grimo v. Blue Shield of Vt.*, 899 F. Supp. 196
(D. Vt. 1995) .............................................14

*Guidry v. Sheet Metal Workers Nat. Pension Fund*,
493 U.S. 365 (1990) ......................................18

*Hollingshead v. Buford Equip. Co.*,
809 F. Supp. 906 (M.D. Ala. 1992) ........................13

*Hollingshead v. Buford Equip. Co.*,
747 F. Supp. 1421 (M.D. Ala. 1990),
*reconsidered*, 809 F.Supp. 906 (M.D. Ala. 1992) ..............13

*In re Bloom*, 839 F.2d 1376, 1377,
1379-1380 (9th Cir. 1988) ..................................7

*In re Dudley*, 249 F.3d 1170, 1173 & 1176 (9th Cir. 2001) ......7

*In re Lee*, 179 B.R. 149, 155 (B.A.P. 9th Cir. 1995) ..........1

*In re Lieberman*, 245 F.3d 1090 (9th Cir. 2001) ...............7

*In re Phillips*, 206 B.R. 196, 202-203
(Bankr. N.D. 1997) .....................................5,6,7

*Int'l Paper Co. v. Suwyn*, 978 F.Supp.506, 509-512
(S.D.N.Y. 1997) .......................................19, 20

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262
(9th Cir. 1991) ...........................................9

*Kulinski v. Medtronic BioMedicus, Inc.*, 21 F.3d 254,
256 (8th Cir. 1994) .......................................9

*Lafian v. Electronic Data Systems Corp.*,
856 F.Supp. 339, 344-348 (E.D. Mich. 1994) .............20,21

*Marshall v. Wells Capital Management Inc.*,
2007 WL 4565164 at pp. 11-13 (D. Ore. 2007) ..............21

*Mertens v. Hewitt Associates*, 508 248 (1983) ...............23

*Miller v. Taylor Insulation Co.*, 39 F.3d 755
(7th Cir. 1994) ..........................................15

*O'Conner v. Commonwealth Gas. Co.*,

251 F.3d 262 (1st Cir. 2001) ................................10

*Outzen v. FDIC ex rel. State Examiner of
Banks of Wyo.*, 948 F.2d 1184 (10th Cir. 1991) ..............11

*Patterson v. Hughes Aircraft Co.*,
11 F.3d 948 (9th Cir. 1993) ................................12

*Patterson v. Shumate*, 504 U.S. 753, 759-760 (1992) .........17

*PBGC v. R.A. Gray & Co.*, 467 U.S. 717 (1984) ...............11

*Pullman-Standard v. Swint*, 456 U.S. 273,
289 n.19 (1982) ..............................................1

*Randol v. Mid-West Nat'l Life Ins. Co. of Tenn.*,
987 F.2d 1547 (11 Cir.), *cert. denied*,
510 U.S. 863 (1993) ......................................9,14

*Saltarelli v. Bob Baker Group Medical Trust*,
35 F.3d 382 (9th Cir. 1994) ................................12

*Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983) ...........9

*Smart v. State Farm Inc. Co.*, 868 F.2d 929,
933 (7th Cir. 1989) ........................................10

*Starr v. JCI Data Processing, Inc.*, 757 F. Supp.
390, 394 (D.N.J. 1991) .....................................10

*Tester v. Reliance Standard Life Ins. Co.*,
228 F.3d 372 (4th Cir. 2000)................................12


**STATUTES & REGULATIONS**

11 U.S.C. § 541(c)(2) ..........................2,5,8,17,21,24

28 U.S.C. § 158(a)(1) .........................................1

California Code of Civil Procedure § 704.115 ............1,2,5

California Code of Civil Procedure § 704.115(a)(1) ..........7

California Code of Civil Procedure § 704.115(a)(3) ..........8

ERISA 3(2)(A), 29 U.S.C. § 1002(2)(A) .........................13

ERISA 4(b)(5), 29 U.S.C. § 1003(b)(5) .........................19

ERISA 201(2), 29 U.S.C. § 1051(2) .............................19

ERISA 206(d)(1), 29 U.S.C. § 1056(d)(1) .......................17

ERISA 403(c)(1) ...............................................24

ERISA 404(a)((1), 29 U.S.C. § 1104(a)(1) ......................11

ERISA 404(a)(1)(A) ............................................24

ERISA 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ...............17

ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3) .................2,17,23

ERISA 502(a)(5), 29 U.S.C. § 1132(a)(3) & (5) ..............17

Internal Revenue Code § 83 ...................................18

Internal Revenue Code § 83(e)(3) .............................19

Internal Revenue Code § 401(13)(A) ...........................17

Federal Rules of Bankruptcy Procedure 8013 ....................1

Treasury Regs. § 1.83-7(b)(2)(i) .............................19

**TREATISES**

BNA Tax Mgmt. Portfolios "Nonstatutory Stock Options"
383-3[rd] at Pgs. A-5, A-7, & A-9 .............................19

BNA Tax Mgmt. Portfolios "Deferred Compensation Arrangements"
385-4[th], Pg. A-75 ..........................................19

Restatement (Second) of Trusts §214 (1959) .................23

**MISCELLANEOUS**

H.R. Rep. No. 93-807, at 3 (1974),
reprinted in 1974 U.S.C.C.A.N. 4639, 4670, 4676-77 .........11

S. Rep. No. 93-127, at 3 (1974), *reprinted in* 1974
U.S.C.C.A.N. 4639, 4871 ....................................23

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This district court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), whereby the district courts of the United States are permitted to hear appeals from the final judgments, orders, and decrees of bankruptcy judges within their judicial districts.

## THE APPLICABLE STANDARD OF APPELLATE REVIEW

When a district court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions de novo.  Fed. R. Bankr. P. 8013.

A mixed question of law and fact occurs when the facts are established, the rule of law undisputed, and the issue is whether the facts satisfy the legal rule.  *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982).  However, 9th Circuit courts have held that where there are mixed questions of fact and law appellate courts conduct a de novo review.  *Boone v. United States*, 944 F.2d 1489, 1492 (9th Cir. 1991); *In re Lee*, 179 B.R. 149, 155 (B.A.P. 9th Cir. 1995)

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether the LTICP's non-qualified stock options are exempt as private retirement plan benefits under California Code of Civil Procedure § 704.115.

2.  Whether the LTICP's non-qualified stock options provide retirement income to employees or otherwise operate to

defer the income of employees for periods extending to the termination of covered employment or beyond.

3. Whether the LTICP's non-qualified stock options are subject to ERISA as a defined "pension plan."

4.    Whether the LTICP's "nontransferability of rights" or antialienation provision is not only enforceable for federal income tax qualification purposes, but also enforceable for ERISA purposes to "exclude" the stock options from the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2)

5.    Whether ERISA preempts California's Code of Civil Procedure § 704.115 to the extent the California statute speaks to pensions regulated exclusively by ERISA.

6.    Whether the Debtor qualifies for equitable relief under ERISA 502(a)(3), assuming the bankruptcy court erred in its determination that the LTICP's non-qualified stock options are not subject to ERISA.

### STATEMENT OF THE CASE

The following case facts are virtually undisputed.  Debtor was born on January 12, 1956, and started working at Wells Fargo on February 1, 1974, where she continued working until October 5, 2005, when her position was eliminated.  From February 23, 1999, and various dates up to and including February 22, 2005, Debtor received non-qualified stock option grants through the Wells Fargo Long Term Incentive Compensation

Plan or LTICP, which Wells originally adopted on September 25, 1984.

The LTICP specifically defines the term "Retirement" at Section 2.1(y), which in the case of Debtor:

"means termination of employment after reaching the earlier of (i) age 55 with 10 completed years of service, or (ii) 80 points (with one point credited for each completed age year and one point credited for each completed year of service), or (iii) age 65." [EXH 4.]

The LTICP goes on to specifically define "Termination of Employment" at Section 10.8(a) which states as follows:

"If a Participant ceases to be an Employee by reason of his death, permanent disability or *Retirement*, each outstanding Option shall become exercisable to the extent and for such period or periods determined by the Committee but not beyond the expiration date of said Option." (*Emphasis added*)

However, the LTICP at Section 10.8(b) also states:

"In the event a Participant ceases to be an Employee for any reason other than his death, permanent disability or Retirement, all rights of the Participant under this Plan shall immediately terminate without notice of any kind."

The Plan then goes on to provide the specific meaning of the term "ceases to be an Employee" by defining "Employee" to mean "an individual who is a common law employee (including an officer or director who is also an employee) of the Company or an Affiliate" at definitional Section 2.1(k).

Debtor ceased to be a "common law employee" of Wells Fargo on October 5, 2005, when her longtime position was eliminated. And though she was subsequently eligible for Well's "Salary

- 3 -

Continuation Pay Plan" ("SCPP"), a classic ERISA "welfare benefit plan" that included "private employer-provided unemployment benefits" which ended as of March 3, 2007, she never performed any further employee services.

Thus, pursuant to the express terms of the LTICP, Debtor qualified for "Retirement" status under the Plan's Section 2.1(y) that triggered the immediate retirement vesting of all of her unexercised stock options as of her October 5, 2005 "termination of employment date" when she ceased to be a "common law employee" of Wells Fargo.  And Debtor's termination of employment followed her having already reached the Plan's "80 point" retirement qualification date for retirement vesting or "finish line" on February 1, 2005, the anniversary for her 31 completed years of service as a longtime Wells Fargo employee [i.e., Age Years = <u>49</u> years or "points" (1/12/1956 to 1/12/2005); plus, Service Years = <u>31</u> years or "points" (2/1/1974 to 2/1/2005)]  And pursuant to Section 10.8(a) of the Plan, all of her outstanding stock options immediately vested as retirement benefits.  These terms are mirrored and explained in further detail in each of the six underlying LTICP "Award Agreements" or "Non-Qualified Stock Option agreement(s)," at Section 3.:

"If your termination is due to Retirement, your Option will *immediately vest* and become exercisable until the expiration

- 4 -

date or until one year after your death, whichever occurs first." *(Emphasis added)* [EXH 24.]

The bankruptcy court held a hearing on the Chapter 7 trustee's objection to Debtor's combined retirement plan exemption under California Code of Civil Procedure § 704.115, and exclusion claim pursuant to 11 U.S.C. § 541(c)(2) on June 5, 2008.  On June 10, 2008, the bankruptcy court entered an order sustaining the trustee's objection, along with its memorandum decision.  Debtor then timely filed her appeal of the bankruptcy court ruling to the district court.

ARGUMENT

**I.    The LTICP's non-qualified stock options are exempt as private retirement plan benefits under California Code of Civil procedure § 704.115 because they evidence the intent of Wells Fargo to design a retirement plan to the extent it specifically defines "retirement," and how an employee's non-qualified stock options will vest as retirement benefits.**

The bankruptcy court found the LTICP was not a private retirement "because it was not designed or used as a retirement plan," and cited I*n re Phillips*, 206 B.R. 196, 202-203 (Bankr. N.D. 1997) in support for its ruling.  Debtor concedes that the bankruptcy court's analysis in *Phillips* has been adopted by the 9th Circuit, and is controlling.  However, in stark contrast to the pre-retirement and pre-bankruptcy conduct of the debtors in *Phillips* vis a vis their self-settled revocable trust, the LTICP's Section 2.1(y) clearly and expressly evidences the

- 5 -

intent of Wells Fargo to design a retirement plan to the extent
it expressly lays out and defines "Retirement" and a retirement
scheme for its employee-participants.  And for the Debtor, the
LTICP's applicable "80 Pt." retirement scheme criteria was the
retirement "finish line" that Debtor would have to cross in
order to have a vested retirement right to exercise her
unexpired ten-year stock options beyond her employment
termination date or "retirement date."  Had Debtor not crossed
that finish line her only contractual option under the express
terms of the LTICP would have been to exercise all of her
unexercised stock options prior to her "non-retirement"
termination date.

     And unlike P*hillips*, the LTICP was designed and
implemented by Wells Fargo and operated solely by the LTICP's
Plan Administrator.  Further, the LTICP's stock options were
funded solely by Wells Fargo, and not by Debtor.  These same
stock options were also not subject to the claims of Debtor's
creditors because of the valid and enforceable
Nontransferability of rights" or antialienation provision in
Section 12., which was subsequently amended and preserved
effective August 1, 2005 to include a participant's same-sex
partner or domestic partner as beneficiaries.  [Exh 4 at Page
13 & Exh 5.]  Further, there is absolutely no evidence that
Debtor ever tried to tie up her stock options in such a way

that she could enjoy them but prevent her creditors from
reaching them.  To the contrary, Debtor clearly had no such
control over the stock options.  [Exh 11]  [*see also: In re
Lieberman*, 245 F.3d 1090 (9th Cir. 2001) which cites *Phillips*
with approval.  The opinion also has an excellent discussion of
the legislative history and intent of Calif. CCP §
704.115(a)(1) and the statutory necessity of a retirement plan
established or maintained by a private employer, as opposed to
simply an arrangement by an individual to use specified assets
for retirement purposes.]

Finally, the *Phillips* decision (*at 203*) relies upon the
analysis of I*n re Bloom*, 839 F.2d 1376, 1377, 1379-1380 (9th
Cir. 1988).  There the 9th Circuit held that in spite of the
debtor having borrowed nearly $300,000 in total loans against
her total combined interest in her medical corporation's
private retirement plan and profit sharing plan valued at only
$475,000, her plans "were not so abused as to lose their
retirement purpose." And the 9th Circuit ruled similarly in the
case of *In re Dudley*, 249 F.3d 1170, 1173 & 1176 (9th Cir. 2001)
where the debtors borrowed $107,000 from their IRAs with a
total value of only $110,271 to pay living expenses.  The 9th
Circuit there held that the fact that a debtor has withdrawn or
will withdraw sums from an IRA for non-retirement purposes does
not automatically disqualify the debtor from claiming the

amount remaining in the IRA as exempt under § 704.115(a)(3). "Otherwise, even a de minimis depletion of the plan assets would destroy the exemption, which would be contrary to the purpose of the exemption statute to preserve income for retirees." [*at 1176*]

The bankruptcy court held that Debtor did not use the LTICP stock options as a retirement plan because she generally exercised her options promptly upon vesting and expended the proceeds on improving her home. But the record clearly shows that of the total 77,060 in stock option shares granted to Debtor by the LTICP during her longtime employment at Wells Fargo, she exercised a total of only 23,780 shares of incentive stock options and non-qualified stock options in 2002 and 2004. As a percentage, this represents an exercise of approximately 31% of her total LTICP stock options, and in comparison to the debtors' borrowings and withdrawals in *Phillips* and *Dudley* above, Debtor's pre-retirement exercises of her LTICP stock options were *de minimis* as a matter of law. [*see* Exh 2]

Regardless, once the LTICP is determined to be an exempt private retirement plan under California law, it is then nevertheless preempted and excluded pursuant to 11 U.S.C. § 541(c)(2) by the LTICP's valid and enforceable antialienation provision under ERISA.

**II.  The LTICP's non-qualified stock options by definition provide retirement income to retired Wells Fargo employees thereby fulfilling ERISA's definition of a covered or subject "pension plan."**

A retirement plan is only "subject to" ERISA if it satisfies the statutory definition of an ERISA plan, and is not otherwise exempt from ERISA coverage.  "The existence of an ERISA plan is a mixed question of fact and law. *Kulinski v. Medtronic BioMedicus, Inc.,* 21 F.3d 254, 256 (8th Cir. 1994). Although the question of whether a particular arrangement is an ERISA plan is a question of law, a determination of whether the arrangement includes all of the elements necessary to satisfy the statutory definition of an ERISA plan is a question of fact to be determined by the court. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262 (9th Cir. 1991).  Crucially for Debtor, ERISA has no specific intent requirement, so an agreement may be subject to ERISA even when the parties did not intend the arrangement to be subject to the statute. *Randol v. Mid-West Nat'l Life Ins. Co. of Tenn.*, 987 F.2d 1547 (11 Cir.), *cert. denied*, 510 U.S. 863 (1993).  So an employer's subjective intent is irrelevant. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983).  Furthermore, the courts have held that coverage under ERISA should be liberally construed, and exemptions from ERISA should be applied narrowly.  Thus, "ERISA is clearly a statute of general application, one that envisions inclusion

within its ambit as the norm." *Smart v. State Farm Inc. Co.*, 868 F.2d 929, 933 (7th Cir. 1989).  And once it is established that an arrangement is subject to ERISA, all of the statute's protections for participants and beneficiaries and all of its obligations for plan sponsors, administrators, and fiduciaries become effective "regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA." *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989).

A purported plan must also be evaluated as a unified whole to determine whether or not it is an ERISA plan.  *O'Conner v. Commonwealth Gas. Co.*, 251 F.3d 262 (1st Cir. 2001).  The employer's obligations are the touchstone of the determination as to whether a benefit program is an ERISA plan.  If they necessitate an ongoing administrative scheme that is subject to mismanagement, then they will more likely constitute an ERISA plan.  Plus, the burden of proof is on the defendant, or in this case Wells Fargo and the trustee, to show that the LTICP stock options are exempt from any provisions of ERISA.  *Starr v. JCI Data Processing, Inc.*, 757 F. Supp. 390, 394 (D.N.J. 1991) [*See*: Tele. Depo Trans. of Wells Fargo's "Paula S. Roe" @10/4/07 Page 40, Line 25, through Page 41, Line 25. (LTICP neither ERISA-exempt "top-hat" nor "excess benefit" plan.)] [EXH 22.]

Congress enacted ERISA for two primary purposes.  First, to guarantee that if a worker has been promised a benefit upon retirement, and she or he has fulfilled whatever conditions are required to obtain that benefit, the worker will in fact receive it.  *PBGC v. R.A. Gray & Co.*, 467 U.S. 717 (1984).  And second, to ensure that employees and their beneficiaries are not deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in those plans.  H.R. Rep. No. 93-807, at 3 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4670, 4676-77; *Connolly v. PBGC*, 475 U.S. 211 (1986).  That is, the overall policy of ERISA is to protect participants' expected payments.  *Outzen v. FDIC ex rel. State Examiner of Banks of Wyo.*, 948 F.2d 1184 (10th Cir. 1991).

That policy is made manifest in the statutory requirement that "a fiduciary shall discharge his duties with respect to the plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries."  ERISA 404(a)((1), 29 U.S.C. § 1104(a)(1).  The controlling rule, to be applied in the interpretation of all provisions of an ERISA plan, is that as "a general principle, employee benefit plans should not be interpreted in such a way as to produce a forfeiture."  *Brown*

*v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1559 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991).

Interpretation of ERISA plans generally is subject to the doctrine of reasonable expectations.  Under that doctrine participants and beneficiaries are presumptively entitled to benefits that they reasonably expect to receive based on the plan documents and other relevant facts.  Although the doctrine has been developed primarily in the context of insurance benefits, its principles are equally applicable to claims relating to pension benefits.  [*see: Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir. 1994)]  ERISA plans are contractual documents, and established principles of contract and trust law govern their interpretation.  *Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372 (4th Cir. 2000). As with other contractual provisions, courts construe the terms of an ERISA plan without deferring to either party's interpretation.  *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518 (4th Cir. 2000).  And if a document governing an ERISA plan is unambiguous, the courts will not look beyond the document's four corners in interpreting its "plain meaning."  *Aramony v. United Way of Am.*, 254 F.3d 403 (2d Cir. 2001).  Plus, the courts generally have held that ambiguities in the plan are to be resolved in favor of the participants and beneficiaries.  *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948 (9th Cir. 1993).

- 12 -

And if a plan does not include a provision required by ERISA, it must be read to incorporate the required provision. *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 235 (4th Cir. 1999).  More importantly, when a plan does not include a provision that addresses something required by ERISA, the courts may determine an appropriate provision. *Hollingshead v. Buford Equip. Co.*, 809 F. Supp. 906 (M.D. Ala. 1992).

ERISA applies to two separate classes of employee benefit plans: 1) welfare benefit plans, and 2) pension plans.  ERISA 3(2)(A), 29 U.S.C. § 1002(2)(A)  In order for a "pension plan," to be subject to ERISA it must be shown that there is 1) a "plan, fund, or program" that is 2) "established or maintained" by 3) an "employer or employee organization."

Any plan that satisfies all of the above requirements and provides benefits of a type contemplated by the statute is subject to ERISA unless it falls within one of the statutory exceptions.  *All* of the statutory elements are necessary to find a plan subject to ERISA.  *Ed Miniat, Inc. v. Globe Life Ins. Co.*, 805 F.2d 732 (7th Cir. 1986).  But note also that ERISA does not contain any provision that requires an employer to qualify a pension fund under the Internal Revenue Code. *Hollingshead v. Buford Equip. Co.*, 747 F. Supp. 1421 (M.D. Ala. 1990), *reconsidered*, 809 F.Supp. 906 (M.D. Ala. 1992).

The meaning of most of the terms found in the definition of "employee benefit plan" are either self-evident or set forth in ERISA. However, the phrase "plan, fund, or program" is not defined in the statute. But in the seminal case of *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)(*en banc*), the court held that "a plan, fund, or program" under ERISA is established if, from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Every federal court of appeals that has since been required to decide whether, on the particular facts before it, a plan has come into being that is subject to ERISA has adopted the *Dillingham* approach. [*See also: Cinelli v. Security Pacific Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995)]

For purposes of satisfying the *Dillingham* test, the following four standards have been developed:

    - *Intended Benefits.* The "intended benefit" requirement is satisfied if intended benefits can be deduced from any source. *Randol v. Mid-West Nat'l Life Ins. Co. of Tenn.*, 987 F.2d 1547 (11th Cir., *cert. denied*, 510 U.S. 863 (1983).

    - *Class of beneficiaries.* The class of beneficiaries consists of all persons meeting the eligibility requirements of the plan or the persons enrolled in the plan. *Grimo v. Blue Shield of Vt.*, 899 F. Supp. 196 (D. Vt. 1995).

    - *Source of funding.* A source of funding exists if a reasonable person can identify the source of funding for the plan. The ERISA definition of "plan, fund, or program" does not necessarily require that payments be made from a specific source or that the plan be separately funded. *See: Fort*

*Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 n.5 (1987). In fact, it is irrelevant whether the benefits are paid from a separate source or from the employer's general assets.

   – *Procedure for receiving benefits.* When no procedure for paying out money is specified, it can be assumed that the departing employee should apply to the personnel department or whoever ordinarily handles distribution of pay or benefits. *Diebler v. United Food & Commercial Workers Local Union 23*, 973 F.2d 206 (3d Cir. 1992).

   And whether a plan subject to ERISA is deemed to have been "established or maintained," no particular formalities are required to create an ERISA plan. *Miller v. Taylor Insulation Co.*, 39 F.3d 755 (7th Cir. 1994).

       Applying ERISA's "pension plan" requirements above to the LTICP Plan document, the "intended benefits" to Debtor can be deduced from Section 10., which describes the "Options" or stock options that the Debtor received from her former employer. The "class of beneficiaries" consists of those persons described in Section 5., which describes "Participation" as "limited to Employees of the Company." Debtor was by definition an "Employee" of Wells Fargo, which is defined in Section 2.1(k) as a "common law employee." Debtor provided employee services to Wells Fargo starting February 1, 1974 through her "termination of employment" date on October 5, 2005, which triggered her "Retirement" status following February 1, 2005, when Debtor accrued her "80 points" as defined in Section 2.1(y). The "source of funding" for the

LTICP is described at Section 4. "Shares Available Under the Plan; Limitations on Awards," which confirms that Wells Fargo has made provision for the availability of the requisite aggregate number of shares "issuable pursuant to all Awards under this Plan." And the "procedure for receiving benefits" from the LTICP is described in Section 3. "Administration," as well as Section 10. "Options," which describes in further detail the LTICP's administrative procedures for the awarding of options, their exercise and payment, as well as the crucial provision for the immediate vesting upon the participant's "Retirement" described at Section 10.8(a).

Finally, Wells Fargo by definition established or maintained the LTICP as a pension plan subject to ERISA when it undertook an ongoing administrative obligation to administer stock options for "as long as we keep granting options" which the Plan has been doing since its inception in 1984, and will continue to do so at least until April 26, 2015, and very likely far beyond. (*See*: Prospectus, Page 11 [EXH 6.]) [*See*: Tele. Depo Trans. of Paula S. Roe @10/4/07 Page 51, Lines 7 to 24.) [EXH 22.]

Both ERISA and the Internal Revenue Code ("IRC") require retirement plans to contain provisions restricting the assignment and alienation of benefits to which a participant or

- 16 -

beneficiary is entitled under the plan.  [ERISA 206(d)(1), 29 U.S.C. § 1056(d)(1); IRC § 401(13)(A)]

But neither ERISA nor the IRC prescribes specific restrictions that must be included in a plan's anti-assignment and antialienation provisions.  Regardless, Debtor argues that the "Nontransferability of Rights" provision is valid on its face as a matter of law.  The Supreme Court in *Patterson v. Shumate*, 504 U.S. 753, 759-760 (1992) concluded as much when it scrutinized the specific language of the antialienation provision there in issue contained in the Coleman Furniture Pension Plan, which essentially mirrors the terms of the nontransferability provision contained in the LTICP Plan document.  The Court went on to rule that such transfer restrictions are "enforceable" as required by 11 U.S.C. § 541(c)(2) because Plan trustees or fiduciaries are required under ERISA to discharge their duties "in accordance with the documents and instruments governing the plan."  ERISA 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Plus, a plan participant, beneficiary, or fiduciary, or the Secretary of Labor, may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan.  ERISA 502(a)(3) & (5), 29 U.S.C. § 1132(a)(3) & (5).  The Court stressed that it has "vigorously...enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to

- 17 -

recognize any implied exceptions to the broad statutory bar," citing its earlier decision in *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365 (1990).

Wells Fargo and the trustee essentially admit the LTICP is "tax qualified" in both their original and amended Stipulations, stating that the Plan contains the antialienation clause "in order to comply with certain other provisions of the IRC." [SEE: EXH 11. & STIP FACTS FOR TRIAL, PARAGRAPHS 9. TO 15.] Debtor argues that this means the LTICP stock options are tax qualified as "nonstatutory stock options" specifically governed by IRC § 83. More importantly the LTICP Prospectus' section on "Income Taxes" at Page 7 renders a tax opinion to prospective plan participants regarding the "federal income tax consequences to participants" of "Non-Qualified Stock Options." [SEE: EXH 6.] The opening sentence guarantees prospective participants they will effectively defer the recognition of all gains on their stock options, and in particular that "A participant who receives a non-qualified stock option grant will not recognize income and the Company will not be allowed a deduction at the time such an option is granted." It is crucial to the LITICP for federal income tax purposes that the Plan's nontransferability provision be valid and enforceable, since it specifically ensures plan participants will avoid income recognition as of the grant date of the options. And IRS has formally determined that the "lack of free transferability" alone, prevents any valuation of an untraded option at grant. [*See:* IRC § 83(e)(3) and Treasury Regs. § 1.83-7(b)(2)(i). *See*

- 18 -

*also:* BNA Tax Mgmt. Portfolio 383-3[rd] "Nonstatutory Stock Options" at Page(s) A-5, A-7, & A-9.] [*See also: Ambris v. Bank of N.Y.*, 1997 U.S. Dist. LEXIS 2575 (S.D.N.Y. Mar. 10, 1997; DOL Adv. Op. 97-10A.]

The court in *Int'l Paper Co. v. Suwyn*, 978 F.Supp.506, 509-512 (S.D.N.Y. 1997) specifically found that the ECA program only "provides for current, pre-retirement income – the ECAs vest and become payable only if the participating executive is still employed by International Paper." [*at 511*]  Also, though not fully addressed by the *Suwyn* court, the ECA program was "designed to motivate and reward *a small select group of top International Paper executives.*" [*Emphasis added.*]  Therefore it is very likely the ECA program was also "exempted" from ERISA coverage because it was an executive "top hat" plan. [*see:* ERISA 201(2), 29 U.S.C. § 1051(2)("top hat plans") and ERISA 4(b)(5), 29 U.S.C. § 1003(b)(5)("excess benefit plans")] [*see also*: BNA Tax Mgmt. Porfolio "Deferred Compensation Arrangements" 385-4[th], Pg. A-75] [*see also*: Tele. Depo Trans. of Wells Fargo's "Paula S. Roe" @10/4/07 Page 40, Line 25, through Page 41, Line 25. (LTICP neither "top-hat" nor "excess benefit" plan.)] [EXH 22.]

*Suwyn* is thus inapplicable on its specific case facts to the Wells Fargo LTICP non-qualified stock options which, as explained above, are governed by IRC § 83, and the systematic deferral of income and income taxation beyond Debtor's

termination of employment date.  Plus, the ECA program did not expressly address or lay out a retirement scheme for that small and select group of top executives, contra to the express retirement scheme contained in the LTICP.  The common sense reason is that these same *Suwyn* "top executives" of course also participated in other expressly retirement plans sponsored by International Paper, but their employer still wanted to give them something more, once the maximum employer contributions to these executives' traditional tax-deductible retirement plans were maxed-out for employment compensation tax deductions purposes due to upper income limitations in the IRC.

The bankruptcy court also cites *Lafian v. Electronic Data Systems Corp.*, 856 F.Supp. 339, 344-348 (E.D. Mich. 1994) in support of its "non-deferral of income" argument.  But again, *Lafian* is clearly distinguishable on its case facts.  There employees received a "Special Recognition" grant under a "new Stock Incentive Program."  [*at 340*]  The *Lafian* court correctly determined that the "incentive stock options" or ISOs were essentially a "bonus program" that recognized and rewarded "past service" in order to encourage and reward former EDS employees to transfer to GM.  [*at 344 &345*]  And as an income tax matter, this is also the case.  Unlike the LTICP's IRC § 83 stock options, the ISOs of GM Class E Common Stock were offered

to employees for their purchase at a "nominal price of 10 cents per share." [*at 340*] So for income tax purposes the now-GM employees who purchased the ISOs would have immediately recognized some amount of current income determined by the difference between the fair market value of exercisable GM ISOs, and the nominal price they paid as of their exercise date. So the *Lafian* court was essentially correct in characterizing the ISOs as bonus payments that would be taxed as current income, and not in the nature of deferred income.

Finally, the bankruptcy court's citation to *Marshall v. Wells Capital Management Inc.*, 2007 WL 4565164 at pp. 11-13 (D. Ore. 2007) for the proposition that the LTICP is not a trust, and therefore not excluded by 11 U.S.C. §541(c)(2), is also inapplicable to our case facts. Though interestingly Marshall also involves the Wells Fargo LTICP, the former employees there were simply not in the same position as Debtor, relative to the LTICP's "retirement vesting" provisions. This is because both former-employees, Marshall and Curdy, "voluntarily resigned" from their employment with WellsCap, and before their stock options had vested as "retirement benefits" under the express terms of the LTICP's Section 2.1(y). [Exh 4, pg 3] So the confusion on the part of Marshall and Curdy was their failure to understand that having "vested" stock options only meant

they could be exercised while they were still common law

employees, or otherwise risk immediate cancellation per the

LTICP's Section 10.8(b), unless they had also reached

"retirement" status as of their resignation date or date they

terminated their employment with WellsCap.  [Exh 4, pg 11]  As

explained above, ERISA applies a contract analysis regarding

promised employee retirement benefits, and once an employee is

contractually entitled to those benefits, ERISA imposes both

fiduciary and trust obligations on the employer to ensure that

those promised retirement benefits are actually paid once the

employee retires.  And to the extent the bankruptcy court's

ruling stands for the proposition that the LTICP stock options

are not "employee benefits" because they are not "assets" and

are simply "contractual option rights," there is no basis or

support under ERISA or federal case law, and should be

reversed.


**III. Once the LTICP is determined to be subject to ERISA, Debtor is entitled to all forms of equitable relief under ERISA 502(a)(3)**

     The legislative history of ERISA indicates that

Congress intended the federal courts to construe the Act

broadly in order to facilitate enforcement of its remedial

provisions.

"the enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act.  The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants." [S. Rep. No. 93-127, at 3 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4871]

Consistent with such legislative purpose, some courts have found that they "have a duty to enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust."  *Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir. 1983), *cert. denied,* 464 U.S. 1040 (1984); *Even v. Penn,* 587 F.2d 453 (10th Cir. 1978); *see also* Restatement (Second) of Trusts §214 (1959).

And in *Mertens v. Hewitt Associates*, 508 248 (1983), the Supreme Court held that equitable relief under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3) includes all "categories of relief that were typically available in equity such as injunction, mandamus, and restitution, but not compensatory damages."  The Court reaffirmed this holding recently in *Great-West Life & Annuity Inc. Co. v. Knudson*, 534 U.S. 204 (2002).

## CONCLUSION & DEBTOR'S PRAYER FOR RELIEF

Based upon all of the foregoing, Debtor requests the following equitable relief:

1)    A Declaratory Judgment that the LTICP Plan Administrator abused its fiduciary duty to the Plan, participants, and

- 23 -

beneficiaries to safeguard vested retirement benefits when it knowingly and intentionally denied that the LTICP stock options in issue are pension plan benefits of the Debtor subject to ERISA and excluded from the estate pursuant to the Plan's valid and enforceable nontransferability provision and Code Section 541(c)(2). That further, Wells Fargo breached a fiduciary duty by knowingly and intentionally asserting its own employer-creditor offset against Debtor's excluded retirement assets in direct violation of the "anti-inurement" and "exclusive benefit" provisions under ERISA Sections 403(c)(1) and 404(a)(1)(A). That further, Wells Fargo caused additional harm to Debtor by issuing and reporting to the IRS and California FTB that she personally received the gross proceeds from the options exercise and sale, rather than reporting the tax transaction under the separate tax identification number for the Estate.

2)    An Order giving the Debtor the sole discretion to decide whether and to what extent the unlawful stock option exercises during tax year 2007 will be "voided," thereby requiring Wells Fargo to issue "Corrected" or "Amended" 2007 Tax Form(s) W-2 & 1099-B accordingly, and promptly transmit such tax forms to the IRS and California FTB, with confirmation of such mail-filing and conformed copies to be served simultaneously on Debtor and Debtor's counsel.

3)    An Order requiring the immediate turnover of any and all monetary proceeds from those unlawful 2007 stock option exercises the Debtor chooses to adopt as her own.

- 24 -

4)    A Declaratory Judgment that also clarifies or defines the future obligations between the parties regarding the safeguarding and future exercises of the "restored" unexpired vested retirement stock options.

Dated: 9/3/2008          /s/ Neal H. Konami
                         Neal H. Konami, Esq. (SBN 111730)
                         Attorney for Debtor/Appellant,
                         Maria O. Segovia

## CERTIFICATE OF MAILING

I, Neal H. Konami, declare: I am a citizen of the United States, over 18 years of age, employed in the City of Oakland, County of Alameda, State of California, and not a party to the within action; my business address is 255 California St., Suite 600, San Francisco, California 94111-4912; that on the date set out below, I deposited in the United States mails, in an envelope bearing the requisite postage, a copy of:

**OPENING BRIEF OF APPELLANT, MARIA O. SEGOVIA**
[Maria O. Segovia Ch7 Case No. 06-30387-TEC; and Appeal of Bankruptcy Court Order (Hon. Carlson) Entered 6/10/08 to U.S. District Court, Northern District of Calif. Case No. 3:08-cv-3075]

addressed to:

Office of the U.S. Trustee
San Francisco Division
235 Pine Street, Suite 700
San Francisco, CA 94104-3401

Daniel M. Linchey, Esq.
c/o Goldberg Stinnett et al
44 Montgomery Street, Suite 2900
San Francisco, CA 94104

at their last known address at which place there is service by United States mail.

I declare under penalty of perjury that the foregoing is true and correct.  This Certificate is executed on September 3, 2008 at San Francisco, California.

I certify under penalty of perjury that the foregoing is true and correct.


*/s/ Neal H. Konami*
Neal H. Konami

- 1 -

<u>**CERTIFICATE OF MAILING**</u>

I, Neal H. Konami, declare: I am a citizen of the United States, over 18 years of age, employed in the City of Oakland, County of Alameda, State of California, and not a party to the within action; my business address is 255 California St., Suite 600, San Francisco, California 94111-4912; that on the date set out below, I deposited in the United States mails, in an envelope bearing the requisite postage, a copy of:

**OPENING BRIEF OF APPELLANT, MARIA O. SEGOVIA**
[Maria O. Segovia Ch7 Case No. 06-30387-TEC; and Appeal of Bankruptcy Court Order (Hon. Carlson) Entered 6/10/08 to U.S. District Court, Northern District of Calif. Case No. 3:08-cv-3075]

addressed to:

Office of the U.S. Trustee
San Francisco Division
235 Pine Street, Suite 700
San Francisco, CA 94104-3401


Daniel M. Linchey, Esq.
c/o Goldberg Stinnett et al
44 Montgomery Street, Suite 2900
San Francisco, CA 94104


at their last known address at which place there is service by United States mail.

I declare under penalty of perjury that the foregoing is true and correct.  This Certificate is executed on September 3, 2008 at San Francisco, California.

I certify under penalty of perjury that the foregoing is true and correct.


/s/ *Neal H. Konami*
Neal H. Konami

CERTIFICATE OF MAILING